# AUGUST AHRENS *v.* BAR ADLER.

NEW TESTIMONY AFTER CASE IS SUBMITTED.—If, after the parties have introduced testimony on each side, and the case has been submitted to the Court, the plaintiff amends his complaint by an amendment which does not change the issues raised by the denials in the answer filed before the amendment, the defendant is not entitled as matter of right to introduce more testimony upon the issues.

COMPLAINT IN SUIT FOR FRAUDULENT SALE OF MINE.—If a complaint avers that the defendant, by false representations as to the value of mines, induced the plaintiff to purchase the same and pay a sum of money therefor, and that the defendant gave plaintiff a deed therefor and received the consideration, and also claims general damages exceeding the consideration, and avers an offer to redeem the deed, it is an action, in common law parlance, *ex delicto,* and not *ex contractu,* and the averment of an offer to return the deed is not an averment of a rescission of the contract, nor of an offer to rescind.

AMENDMENT TO COMPLAINT.—If the plaintiff in his complaint claims damages for fraudulent sale of mines to him, and avers an offer to return the deed given to him, an amendment, striking out the offer to return the deed, does not change the issues tendered in the complaint.

DAMAGES FOR FRAUD IN SALE OF MINE.—In an action for damages for the fraudu-

lent sale of a mine, the plaintiff may recover a larger sum, if claimed in the *ad damnum* clause, than the consideration paid.

OFFER TO RETURN DEED.—An offer to return a deed does not reinvest the grantor with the title, nor is it a rescission of the contract by the grantee, nor an offer to rescind.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

The following was the complaint in this action :

" August Ahrens, the plaintiff in this suit, complains of Bar Adler, the defendant, and for cause of action alleges : That on the 31st day of July, A. D. 1863, and also on divers, days and times previous thereto, as well as after that date, and up to the 10th day of October, 1863, at the City of San Francisco, the defendant, Bar Adler, having offered to this plaintiff that he would convey, by a certain instrument commonly called a mining deed or conveyance, the undivided one half part of the interest which he, the defendant, then possessed in the following enumerated veins or lodes of rock, containing, as defendant alleged, precious metals of gold, silver, and copper, situate in the then Territory, now State, of Nevada, described as follows, to wit : McHenry Ledge, first location, situate in Reese River District, Territory of Nevada ; also, the Covington Ledge, first northeast, situate in the district and territory aforesaid ; also, the Racine Ledge, first location, situate in the district and territory aforesaid ; also, the Covington Ledge, second northerly extension, situate in the district and territory aforesaid ; also, the Racine Ledge, first eastern extension, situate in Lander County, territory aforesaid ; also, Ethan Allen Ledge, situate in Big Creek District, territory aforesaid ; also, Mountain Queen Ledge, first extension, situate in Reese River District, territory aforesaid ; also, Philadelphia Ledge, in the territory aforesaid ; also, Lafayette Ledge, situate in Big Creek District, territory aforesaid ; also, Pacific Ledge, first north extension, situate in Reese River District, terri-

77

tory aforesaid; also, Hudson Ledge, territory aforesaid; also, Mammoth Ledge, Sparks Company, situate in Smokey Valley, territory aforesaid; also, Minnehaha Ledge, Baldwin Company, territory aforesaid; also, Lake Erie Ledge, first location, Comet Company, Reese River District, territory aforesaid; also, Atlantic Ledge, Atlantic Gold and Silver Mining Company, Reese River District, territory aforesaid; also, Mammoth Ledge, Black Company, Nevada Territory: upon condition that this plaintiff should render services and perform labor by himself and servants between that date and the 16th day of November, 1863, as house builder and mechanic, on certain buildings the property of the defendant, which he was then about to commence the construction of, situate on the north side of Sacramento street, between Dupont and Stockton streets, in the City of San Francisco; and also furnish materials to be used in the construction of said buildings, such as brick, lumber, lime, and such other materials as are generally used in the construction of brick buildings, to the defendant, to the extent, price and sum of one thousand four hundred dollars, at the then gold market price for such labor and materials; did willfully, knowingly, falsely and fraudulently, and with intent to cheat and defraud the plaintiff, falsely and fraudulently represent, say and declare to this plaintiff that the interest which the defendant then offered to convey to plaintiff in said several mines, lodes or ledges was of great value; that the said interest was of the market value of three thousand dollars; that the said mines were well known; that the defendant then took from his pocket and delivered to plaintiff, for the purpose and with intent fraudulently to induce plaintiff to purchase said interest, a piece or sample of very rich gold bearing quartz, rock, or ore (which is here produced); and the defendant then stated to plaintiff, that of his own knowledge the specimen or sample of rock in question had been taken from the said Minnehaha Mine or Ledge; that he had taken it therefrom; and that said specimen in point of richness and value was scarcely a fair average specimen or sample of

the ore of said mine; that the said mine was a large one; that the lode or ledge was from fourteen to twenty feet in thickness at the croppings or surface; that it grew wider all the way below the surface to the depth of one hundred and thirty feet, to which depth the mine had been opened; that said mine contained tens of thousands of tons of rock or ore as rich, if not much richer, in gold than the sample or specimen shown as aforesaid; that said ledge or lode then commanded in the market here one hundred dollars per foot; that the defendant had examined said several mines; that he found that they were one and all rich in gold, silver and copper; that he found the said Mountain Queen Ledge, Lode or Mine was richer even than the Minnehaha Ledge or Mine; that he would guarantee to the plaintiff that the Minnehaha Ledge would be worth and command in this market one thousand dollars per foot within the sixty days thence next ensuing; that he would warrant that the interest which he proposed to convey to plaintiff in said several mines or lodes as aforesaid, before the close of the year 1863, would command in this market forty thousand dollars to sixty thousand dollars; that if plaintiff would take said interest and pay the consideration aforesaid, and if afterwards plaintiff should think he made a bad bargain, that he (the defendant) would bring forthwith a good, wealthy man to plaintiff who would take said interest off plaintiff's hands, and pay him fourteen hundred dollars therefor, and a large profit besides; that the defendant was a wealthy Jew; that he knew plaintiff was not a Jew, but that plaintiff's wife was a Jewess, and because plaintiff's wife was a Jewess the defendant was plaintiff's friend, and that the defendant honestly desired to help plaintiff; that if plaintiff would take the defendant's *sacred* word of honor in said matter and purchase said mining interests, this plaintiff would at once become wealthy; that plaintiff should keep quiet about said affair; that the offer which he then made to plaintiff in point of liberality was such an one that he would make to no one but plaintiff; that he would not like that said offer would be noised about, for fear that

his (the defendant's) wife might hear of it; that if she should hear of it she would lock him out of doors; that she was in the habit of serving him in that manner very often; that she generally served him rightly.

" That plaintiff, relying upon said representations, on the 31st day of July, 1863, accepted the defendant's said offer, and entered into a building contract or agreement with the defendant, whereby plaintiff agreed to render and perform by himself and servants, labor as house builder and contractor, and to furnish building materials as aforesaid, and to work up the same into and about the two brick buildings, the property of the defendant aforesaid, to the value, at the market price for such labor and materials, of one thousand four hundred dollars ($1,400.)

" That the plaintiff fully, in all respects, furnished the materials for, and performed the labor on, said buildings, to the value, at the gold market price, of one thousand and four hundred dollars; and the plaintiff duly performed all the conditions of said agreement on his part to be kept and performed, and on the 10th day of October, 1863, plaintiff became entitled to a deed of said mining interest from the defendant, and afterwards, on the said 10th day of October, 1863, the defendant, in consideration of the sum of one thousand four hundred dollars, which had been previously paid to him in building materials and labor as aforesaid, made and delivered to plaintiff a deed or conveyance of the mining interest aforesaid. That in truth, and as the defendant then and all the time well knew, the said mining interest was not of great value, or of any value whatsoever; that the same was worthless and unsaleable; that said sample or specimen of quartz had not been taken by defendant from the Minnehaha Ledge; that defendant had not visited or examined said mines; that the said mines were unknown; that said specimen or sample was not an average sample of the ore of said Minnehaha Mine, or of any said mines or lodes; that in truth the said specimen proves to be a piece of California gold bearing quartz; that the said Minnehaha

Mine is not a large one; that there was no such mine; in fact, that said mine is not fourteen to twenty feet in thickness at the surface, nor does the same grow wider below the surface of the earth; that said mine had not been opened; that said mine does not contain tens of thousands of tons of rock or ore as rich as the specimen shown by defendant, or any rock of that quality or richness, or of any richness whatever; that said ledge or mine did not then or at any time sell for one hundred dollars per foot; that the defendant had not examined any of said mines or lodes; that none of said mines were or are rich in gold, silver, or copper; that the Mountain Queen Ledge was not rich; that there was no such mine; that the Minnehaha Ledge did not at any time command one thousand dollars a foot in this or any other market, or any other price per foot; that the said mining interest did not at any time during the year 1863 command forty thousand dollars, or sixty thousand dollars, or any other price; that in due time plaintiff did think he had made a bad bargain, and requested defendant to produce a man who would take said interest off plaintiff's hands for one thousand four hundred dollars; that defendant did not produce such man or any man; that defendant did not desire to help plaintiff; that plaintiff did take and act upon defendant's sacred word of honor on said matter.

" And the foregoing is the sequel; that plaintiff did not become wealthy by the purchase of said mining interest; that the said mining deed has not been recorded; that within thirty days after the delivery thereof by defendant to plaintiff, this plaintiff discovered for the first time that he had been misled and defrauded by the defendant in the premises; as that is to say, that said mining interest was absolutely worthless, and never had been of any value whatsoever.

" That by reason of the premises herein above stated, this plaintiff has been misled, cheated, wronged, and defrauded by the defendant, to plaintiff's damages in the sum of two thousand five hundred dollars. Wherefore, plaintiff de-

mands judgment against the defendant in the sum of two thousand five hundred dollars, with costs."

The complaint was not verified. The answer was a general denial. The case was tried by the Court on the 22d day of August, 1866, and each party introduced testimony on the issues, and the cause was submitted. On the 8th day of November, 1866, and before the Court had given its decision, the plaintiff asked leave of the Court to amend his complaint by striking out the following: "And thereupon, to wit: on the 30th day of October, 1863, at the City of San Francisco, this plaintiff called upon the defendant and offered to return said mining interest to defendant; that the defendant then refused and still refuses to accept the return to him of said mining deed and interest. Plaintiff here tendered said mining deed to the defendant." The defendant made no objection to the amendment, and the Court allowed the same. Thereupon the counsel for the defendant offered by further and additional testimony to prove that at the time of the sale the defendant told the plaintiff he knew nothing of the value of the mines, and had never seen them, and could and would make no representations of their value. To this plaintiff objected: 1st. That the amendment made by plaintiff did not open the whole cause for additional evidence; 2d. That the defendant had already introduced evidence to the same point, and that offered would only be cumulative; and, 3d. That the plaintiff had offered no additional evidence in the cause. Plaintiff's objections were sustained, and defendant, by his counsel, excepted. Defendant then offered to prove the value of the said mining interests at the date of the commencement of this action, which was objected to by plaintiff. 1st. That no proof of the value of said mining interest was competent, except that showing such value at the date of the contract, the 31st of July, 1865; and, 2d. That the amendment allowed did not warrant the opening of the cause for further proofs of any kind, and especially that offered by defendant. Said objec-

tions were sustained by the Court, the offered evidence ruled out, and defendant excepted.   Defendant thereupon offered to prove, that on the 10th day of October, 1863, when the deed from defendant to plaintiff was executed, that the value of said mining interests was equal to two thousand dollars. To this offered proof plaintiff objected : 1st. That the amendment asked and allowed did not open the case for further proofs, and especially that offered by defendant; 2d. That no proof of value would be competent, except such as would show its value at the date of July 31st, 1863, the time it was agreed to be taken by plaintiff from defendant; and, 3d. That defendant had already introduced evidence to the same point.   On this offer and the objections thereto, the Court ruled that defendant might prove the actual value of said mining interests on the 10th day of October, 1863, provided defendant would follow the same up by proofs that plaintiff at said date knew of such actual value of said mining interests, and took said deed from defendant with such knowledge.   Defendant declined to make or offer any such proofs as were suggested by the proviso contained in the Court's ruling; and thereupon, plaintiff's objections to said offered proof were sustained, and the defendant's counsel excepted. Whereupon, judgment was entered in favor of plaintiff for the sum of fourteen hundred dollars, on said 8th day of November, 1866.

The defendant appealed from the judgment and from an order denying a new trial.

*Jarboe & Harrison,* for Appellant.

The complaint, as it was originally drawn, and the issue presented to and tried by the Court, and to which all the evidence was pointed, was for a rescission of the contract; whereas, by the amendment the relief sought was not a rescission of the contract, but simply damages for the injury sustained by the fraud practiced by the defendant upon the plaintiff.

The plaintiff claimed to have been induced to enter into a contract for the purchase of the mining land by the fraudulent representations of the defendant. Now, if this were so, he had three remedies:

First—He could rescind the contract and recover back the amount he had paid.

Second—He could stand to his bargain after discovering the fraud, and recover damages on account of the fraud; or,

Third—He could wait till his vendor should bring his action, and then he could *recoupe* the damages sustained by the fraudulent act. (Sedgwick on Measure of Damages, 296; *Allaire* v. *Whitney,* 1 Hill, 484; *Whitney* v. *Allaire,* 4 Hill, 557; *Dorr* v. *Fisher,* 1 Cush. 274; *Kimball* v. *Cunningham,* 4 Mass. 505.)

As the purchase money in this instance had been paid before the fraud was discovered, the plaintiff was confined to the first two remedies, and brought his action accordingly. In order to enable him to rescind the contract, it was necessary that he should return to the vendor all that he had received from him, in order that both parties might be placed in *statu quo,* and be in every respect the same as though no contract had ever existed between them; for this is the prime essential to the rescission of a contract. (*Thayer* v. *Turner,* 8 Met. 552; *Conner* v. *Henderson,* 15 Mass. 319; *Gifford* v. *Carvill,* 29 Cal. 592.) It is utterly inconsistent with the idea of rescission, that a party should retain what he has received, and also be entitled to recover what he has given in exchange. (*Masson* v. *Bovet,* 1 Denio, 74; *Shepherd* v. *Fisher,* 17 Ind. 236; *Gatling* v. *Newell,* 9 Ind. 572; *Wheaton* v. *Baker,* 14 Barb. 594.) Even though the article received by the vendor be worthless, there can be no rescission unless it be returned. (*Bacon* v. *Brown,* 4 Bibb, 92; *Conner* v. *Henderson, supra*; *Campbell* v. *Fleming,* 1 Ad. & E. 40.) The cases holding that a worthless article need not be returned, are those where the fraud is set up as a bar to an action for the purchase money, rather than by way of *recoupement* for the damage suffered, and for the reason that on account of

the worthlessness of the article the consideration has failed, and the promise was a *nudum pactum.* (*Beecker* v. *Vrooman,* 13 Johns. 302; *Burton* v. *Stewart,* 3 Wend. 236; *Van Epps* v. *Harrison,* 5 Hill, 63; *Perley* v. *Balch,* 23 Pick. 286.) In no case is the vendee allowed his action for the purchase money without a return of the article. (*Whitney* v. *Allaire,* 4 Hill, 557.) "To rescind a contract is to annul it and claim nothing under it. In this case the vendor does not appear to have rescinded, but to have claimed both the property and the money paid in pursuance of it. *This he cannot do.*" (*Miller* v. *Steen,* 30 Cal. 407; *S. P. Tissot* v. *Throckmorton,* 6 Cal. 471.)

Here was a good complaint for a rescission of the contract. This was the issue presented to the defendant, and which he traversed by his answer. But after all the evidence had been given under the issues thus presented, and the case had been submitted to the Court, the plaintiff amended his complaint by striking therefrom all the allegations that had any pointing towards a rescission of the contract, and by his complaint as amended elected to affirm the contract, and try to recover damages for the breach. By this amendment he changed the entire nature of the action, as well as the relief sought for, since in his first election he would be entitled, upon proof of the fraud, to recover the whole of the purchase money; whereas, in his second, he could only recover the actual damage suffered by him. (See *Cook* v. *Castner,* 9 Cush. 273.)

If, then, an amendment of the complaint necessitates the allowance of an amendment of the answer, it follows necessarily that all evidence that is pertinent to the new issue must be admitted upon the trial. (*Akin* v. *Albany N. R. R. Co.,* 14 How. Pr. 339; *Whitcomb* v. *Hungerford,* 42 Barb. 185; *Dox* v. *Dey,* 3 Wend. 362; *Corning* v. *Corning,* 2 Seld. 105.)

*Thompson Campbell,* for Respondent.

A party defrauded in a contract has a choice of remedies. He may stand to the bargain, even after he has discovered the fraud, and recover damages on account of it, or he may rescind the contract and recover back what he paid or sold. (*Whitney* v. *Allaire,* 4 Denis. 558.)

If, however, a party elects to stand by his contract, his remedy in such case is by an action on the case, in which he may not only recover compensatory damages, but the jury may find exemplary damages. But if he bring an action to recover back the price, then such action is assumpsit for money had and received, and to sustain which a rescission of the contract must be shown. In the one case the action is for damages resulting from the fraudulent breach, and in the other the action is merely to recover back the consideration. In the case at bar there was no disaffirmance of the contract, but on the contrary, the party defrauded performed his part of the contract; but his right of action for the fraud remained unaffected by such performance.

The question is, did the words stricken out change the character of the action from assumpsit to case?

Testing the complaint by common law forms, it never was an action for money had and received; but, independent of this proposition, the allegations as stricken out did not amount to a legal rescission of the contract that would have entitled the plaintiff to recover back the consideration money on the ground that a restoration of the property or an offer to restore it had been made.

If the plaintiff had claimed a recovery of the consideration money on the ground that he had offered to return the property conveyed to him, he must have inevitably failed. The allegation, therefore, as stricken out, was wholly immaterial; it was mere surplusage, and in or out of the complaint, had no bearing upon the character of the action.

Even if it were conceded, which it is not, that the amendment was necessary in any view of the case, when the party

has had full benefit of any defence which he chose to make, when he was clearly not taken by surprise, an amendment after the trial, so as to conform to the facts proved, is always allowable. (*Hunter* v. *Hudson River Iron Machine Co.*, 20 Barb., S. C., 502; *Connolley* v. *Peck*, 3 Cal. 82; *Lyon* v. *Sutton*, 13 Cal. 494.)

By the Court, SHAFTER, J.:

The correctness of the ruling by which the evidence offered by the defendant after the complaint had been amended was rejected by the Court, depends upon whether the issues raised by the denials of the complaint were changed by the amendment in any material particular; and that is the point to which the argument of the appellant is addressed.

Our judgment upon the question is, that the issues were not altered by the amendment, and that there was not even a complexional change made in them.

The defendant claims that the complaint, prior to the amendment, made a case of money had and received by the defendant to the plaintiff's use; the purpose being to recover back the consideration paid, on the ground that the contract had been rescinded by the plaintiff. But money had and received was not the case which the complaint presented. The action, in common law parlance, was not *ex contractu* but *ex delicto*. Its gist was a fraud practiced upon the plaintiff by the defendant through false representations—whereby the plaintiff was drawn into the contract for the purchase of the mines. General damages were claimed; and they, it is to be observed, were not limited to the purchase money, but far exceeded it in amount. The clause of the complaint struck out under the leave to amend did not aver in direct terms that the sale had been rescinded, nor did the facts detailed in the clause amount to a rescission, or to an offer to rescind in legal effect. An offer "to return the deed" given by the defendant to the plaintiff would not, if it had been accepted, have invested the defendant with the title to the mines.

There being, then, no effectual averment of an offer by the plaintiff to put the defendant in *statu quo*, rescission was not a point in the right counted on. The averment of an " offer to return the deed" was abortive from the beginning.

We may, and if need be, we are bound to presume, that the case was tried as one sounding in damages; fraud being the gist, and not a mere stepping-stone to the gist. A larger sum than the consideration, rendered for the conveyance,. might have been recovered under the *ad damnum*, and the circumstance that the amount recovered was but the equivalent of the consideration, though not destitute of argumentative weight, is far from demonstrating that the hearing was as of a claim by a vendee for a return of purchase money *eo nomine*, on an allegation that the sale had been rescinded.

Judgment affirmed.

Mr. Justice RHODES did not express an opinion.