[No. 12722.   Department Two. — July 8, 1890.]

HENRY MAYER, RESPONDENT, v. A. J. SALAZAR, JR., APPELLANT.

FRAUD — FALSE REPRESENTATIONS — EXCHANGE OF HORSES — LIABILITY FOR DAMAGES — KNOWLEDGE OF FALSITY — UNWARRANTED ASSERTION. — It is not essential to the liability of the owner of a horse for damages for false representations as to the soundness of the horse, inducing an exchange therefor, that such owner should be proven to have actually known the horse to be unsound at the time of the trade; but actual fraud is made out if it appears that the horse was unsound in fact, and that the positive assertion as to its soundness was not warranted by the information of the person making it, though he may have believed it to be true.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion.

*Sidney V. Smith*, for Appellant.

The mere fact that the horse was unsound at the time of the exchange, and was represented by the defendant as being sound, will not warrant a recovery. (Civ. Code, sec. 1572; 1 Benjamin on Sales, secs. 638 et seq., and note; sec. 694; 1 Smith's Lead. Cas. * 185, and note; 2 Smith's Lead. Cas., 8th ed., p. 103, notes to *Pasley* v. *Freeman; Taylor* v. *Leith*, 26 Ohio St. 428; *Parmlee* v. *Adolph*, 28 Ohio St. 10; *Whuber* v. *Randall*, 48 Ill. 182; *Bird* v. *Forceman*, 62 Ill. 212; *Merwin* v. *Arbuckle*, 81 Ill. 501; *Tone* v. *Wilson*, 81 Ill. 529; *Manlock* v. *Fairbanks*, 46 Wis. 415; *King* v. *Eagle Mills*, 10 Allen, 548; *Rawson* v. *Harger*, 48 Iowa, 271.)

*Jarboe, Harrison & Goodfellow,* for Respondent.

The positive assertion of an untrue fact, not known to be true, or not warranted by the information of the person making it, is actual fraud. (Civ. Code, sec. 1572, subd. 2; *Litchfield* v. *Hitchens,* 117 Mass. 197; *Chatham* v. *Moffatt,* 147 Mass. 403; *Indianapolis etc.* v. *Tyng,* 63 N. Y. 653; *Stone* v. *Covell,* 29 Mich. 359, 362, 363.)

BELCHER, C. C. — The plaintiff and defendant exchanged horses, and this action was brought to recover damages for the false and fraudulent representations, alleged to have been made by the defendant, as to the soundness of his horse, whereby the plaintiff was induced to make the exchange.

The court below gave judgment for the plaintiff, from which, and from an order denying a new trial, the defendant appeals.

The court, after finding that the horse of the defendant was unsound at the time of the exchange, further found as follows:—

"2. That defendant, knowing his said horse was unsound, caused the animal to appear sound, and concealed and suppressed the true condition of the horse, and represented to plaintiff that said horse was sound, and thereby . . . . induced the plaintiff to exchange his said mare for said horse.

"3. That defendant, with intent to deceive and defraud the plaintiff, and with full knowledge that said horse was unsound and unfit for any use by the plaintiff, did represent, at the time of making said exchange, that said horse was sound; and that plaintiff, relying on defendant's said representations, did then exchange and deliver his said mare for said horse."

It is claimed for the appellant that these findings were not justified by the evidence, because there was no sufficient proof that he knew his horse was unsound at the time of the trade; and it is said that in such an

action it is necessary for the plaintiff to prove, "not only the falsity of the representations in point of fact, but that the defendant, at the time the representations were made, had knowledge of their falsity, or made them without reasonable grounds for believing their truth."

The testimony was conflicting upon most of the issues raised, but it was proved for the plaintiff that the horse was spavined and unsound. Dr. Jacobson, a veterinary surgeon, testified that he saw the horse shortly after the exchange, and that "he then had a bone spavin. A horse couldn't throw out such a spavin in less than three to five or six months. A horse goes lame from the time he gets the hurt that causes the spavin." And again, in rebuttal, the same witness testified: "I should judge that it would take about three to six months to develop, for such a spavin as was on this horse to develop. The horse must have been lame from the time of getting the injury which caused the spavin to form. The horse might travel during this time without any lameness, but a drive of thirty-five miles would be liable to make him very lame, after standing still for a little time." And on cross-examination he was asked: "Do all horses go lame that have spavins?" and answered, "Yes, sir."

The plaintiff testified that defendant came to him one day, and said "he had a very fine horse he would like to trade"; that subsequently defendant asked him to go to the stable where the horse was kept and see him; that he went to the stable, and when the horse was brought out of the stall he remarked: "Well, the horse is a little lame; what is the matter with him?" and defendant replied, "the horse was all right, and perfectly sound, but that he had been out to grass and was rather soft, had been driven fifty miles from the Mission San José the day before, and was a little stiff, but would be over his stiffness in a day or two"; that the witness saw the horse again, when he was still lame, and said: "The horse is lame, what will be done?" and the defendant

replied: "He will get over it in a day or two," and "you can take my word the horse is sound"; that when the written contract of exchange was brought to him to be signed, he said: "I like to have title and soundness guaranteed," and defendant said: "What is the good of it? My lawyer made it out, and you can take my word as a gentleman that the horse is sound"; that the witness took the defendant's word and made the trade, but that the horse continued so lame that he could not be driven, and was never of any use to him.

If this testimony was true, — and most of it was confirmed by other witnesses,—then it is evident that when the defendant made the representations complained of he had knowledge of their falsity, or made them without reasonable grounds for believing their truth. This being so, the findings cannot be disturbed for want of evidence to support them.

One of the code definitions of actual fraud committed by a party to a contract, with intent to induce another party to enter into the contract, is as follows:—

"The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true." (Civ. Code, sec. 1572, subd. 2.)

A case very similar to this was presented in *Litchfield* v. *Hutchinson*, 117 Mass. 195. There the plaintiff had purchased a horse from the defendant, and at the trial he introduced evidence tending to show that he was induced to make the purchase by false representations made by the defendant as to the soundness of the horse. The defendant testified that he made no representations whatever, and that he had worked the horse almost every day for three or four weeks, and did not observe any lameness, or know that he was unsound. The appellate court, by Morton, J., said:—

"This is an action of tort, in which the plaintiff alleges that he was induced to buy a horse of the defend-

ant by representations made by him that the horse was sound, and that the horse was in fact unsound and lame, all of which the defendant well knew. To sustain such an action it is necessary for the plaintiff to prove that the defendant made false representations, which were material, with a view to induce the plaintiff to purchase, and that the plaintiff was thereby induced to purchase. But it is not always necessary to prove that the defendant knew that the facts stated by him were false. If he states, as of his own knowledge, material facts susceptible of knowledge, which are false, it is a fraud which renders him liable to the party who relies and acts upon the statement as true, and it is no defense that he believed the facts to be true. The falsity and fraud consist in representing that he knows the facts to be true, of his own knowledge, when he has not such knowledge. . . . . . If the defect in the horse was one which might have been known by reasonable examination, it was a matter susceptible of knowledge, and a representation by the defendant, made as of his own knowledge that such defect did not exist, would, if false, be a fraud for which he would be liable to the plaintiff, if made with a view to induce him to purchase, and if relied on by him."

The law thus declared is evidently in harmony with the provisions of the code above cited, and we therefore advise that the judgment and order appealed from be affirmed.

VANCLIEF, C., and HAYNE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.