Howe *et al. v.* Martin *et al.*

No. 2231, Okla. T.   Opinion Filed May 12, 1909.

(102 Pac. 128.)

1.   **FRAUD—Fraudulent Representations—Falsity and Knowledge Thereof.** A party is guilty of fraud and deceit where, with intent to induce another to enter into a contract, he makes a positive assertion, which is material, in a manner not warranted by his information, or where he is not shown to have reasonable grounds for believing it true, where the assertion so made is not true, even though believed by the party making it. In such a case the definite assertion as a fact of that which is untrue, concerning that which the party has no knowledge, is tantamount in its effects to the assertion of something which the party knows to be untrue.

2.   **PRINCIPAL AND AGENT—Liability of Principal to Third Persons.** A principal is responsible to third persons, not only for the statements and acts of his agent acting within his actual authority, but also for such acts and statements as he may do and make acting within the apparent scope of the authority conferred.

3.   **EXCHANGE OF PROPERTY—Remedies.** A person induced by false and fraudulent representations to purchase or exchange for property has three remedies. He may, first, upon discovery of the fraud, rescind the contract absolutely, and sue in an action at law, and recover the consideration parted with upon the fraudulent contract, and in such a case he must restore, or offer to restore, to the parties sued whatever he has received by virtue of the contract; or, second, he may bring an action in equity to rescind the contract, and in such a case it is sufficient for plaintiff to restore, or make offer in his petition to restore, everything of value which he has received under the contract; or, third, he may affirm the contract, retain that which he has received, and bring an action at law to recover the damages sustained by reason of his reliance upon the fraudulent representations.

4.   **DEEDS—Vendor and Purchaser— Rescission— Sufficiency.** An offer to return a deed received does not divest grantee, or reinvest the grantor with title, nor is it a rescission of the contract by the grantee, nor sufficient to constitute an offer to rescind.

5.   **FRAUD—Measure of Damages.** A party who makes an exchange of properties is entitled to make as good a bargain as he can, provided only he deals honestly. He may place his own property

Vol. 23—36

at a high price and secure another's at a low one. To the benefit of his bargain he is entitled, and he should not lose this legitimate gain because the other party has been dishonest. The measure of damagess, in a case of fraud and deceit on such an exchange, should be, and therefore is, the difference in ·value between the property conveyed to him and the value of that which would have .been conveyed had such property been as represented and the actual contract honestly fulfilled.

(Syllabus by the Court.)

*Error from District Court, Woodward County; J. L. Pancoast, Judge.*

Action. by J. W. Martin and another against R. F. Howe and another. Judgment for plaintiffs, and defendants bring error. Reversed· and remanded, with directions.

*Chas. R. Alexander* and *Hoover & Swindall,* for plaintiffs in error, contended, *inter alia,* that to constitute actionable fraud the false representation must be made by a party knowing them to be false,' citing: *Southern Develop. Co. v. Silva,* 125 U. S. 247; *Brackett v. Griswold,* 112 N. Y. 467; *Hoffman v. Kirby* (Cal.) 68 Pac. 321; *Boddy v. Henry et al.* .(Iowa) 85 N. W. 771; *Williams v. Mc Fadden et al.* (Fla.) 11 Am. St. Rep. 345. Measure of damages for fraud: *Nash v. Title Co.* (Mass.) 47 Am. St. Rep. 498; *Gustaveson v. Rustemyer* (Conn.) 66 Am. St. Rep. 92; *Hetch v. Metzler* (Utah) 48 Pac. 37; 11 A. & E. Enc. Law 574.

*A. M. Appelget,* for defendants in error.—On the elements of fraud: Wilson's Rev. & Ann. St. §§ 834, 835; *Foley v. Holtry,* 43 Neb. 133; *Stevens v. Allen,* 51 Kan. 144; *Matlock v. Shaffer,* 51 Kan. 208; *Hurdman v. First Nat. Bank,* 50 C. C. A. 623.

DUNN, J. ·This action was brought in the district court of Woodward county, and arises out of a controversy between plaintiffs in· error, defendants below, and defendants in error, plaintiffs below, over an exchange of lands. The contention of plaintiffs, as shown by the petition and the evidence, is that by and through the fraud and deceit of defendant they were induced to exchange their farm, which· was located in Woodward county, Okla., for 80 acres of land in Texas county, Mo. Aside ·from al-

leged fraud in the inducement to make the exchange, plaintiffs claim that the defendants agreed to furnish them with a good and sufficient title, evidenced by warranty deed and a clear abstract of the Missouri land, and aver in their petition that the deed delivered did not convey the tract for which plaintiffs traded, and that the same was not such a deed as was contemplated, and that the abstract did not show title in the defendants, and hence no title was conveyed plaintiffs by the deed delivered. In declaring upon this feature of the case, plaintiffs, assuming that the papers delivered to them were nullities, pleaded a tender back of the same, and in open court on trial offered them to the defendants. In the prayer to the petition, however, plaintiffs prayed that the deed so made and delivered by the defendants be reformed, so that the same would be a deed of general warranty, and that when so reformed that plaintiff have and recover judgment for the damages suffered upon a breach of the warranties contained. To this defendants answered that, subsequent to the time of the original transfer of the properties, and prior to the commencement of the action, they tendered to plaintiffs a good and sufficient, complete and correct, abstract of the title to the said land in Missouri, showing that the same was clear and free from incumbrances, and that the defendants were the owners thereof in fee simple, and announced that they would in open court tender an abstract of title showing the same. On the trial of the cause the defendants tendered plaintiffs a correct abstract, showing title in them to the Missouri land, and also a deed of general warranty to the land. Defendants refused to accept the tender made by plaintiffs, and plaintiffs refused to accept the tender made in court of the corrected abstract and deed by defendants. The court found, and so instructed the jury, that the plaintiffs had not shown that the defendants were not the legal owners of the land in Missouri, and did not have the legal title thereto, and from the entire record we are satisfied this conclusion is correct. The prayer contained in plaintiff's petition for a reformation by the court of the deed received for the Missouri land was fully met

by defendants' acquiescence and tender of the corrected abstract
and warranty deed above mentioned.   All that the court could
have accomplished by a judgment decreeing the reformation of
this deed, the defendants effected in their voluntary execution and
tender of the same.   So it seems to us the question as to the title
of the Missouri land is no longer involved.   If it had been the
only matter at issue in the case, a tender at the time it was made
would have the effect of burdening defendants with the costs; but,
as it was not, plaintiffs under their petition ought to have accepted
it, and proceeded with the trial for damages prayed on account
of fraud and deceit.   The offer on the part of plaintiffs to return
the deed and abstract to the defendants did not reinvest defend-
ants with title, nor was it a rescission of the contract on the part
of plaintiffs, nor in itself constitute an offer to rescind.   18 En-
cyclopædia of Pleading & Practice, p. 838; *Ahrens v. Adler,* 33
Cal. 608; *Jeffers v. Forbes,* 28 Kan. 174.   While the land was
misdescribed in the deed, still as between the parties there can be
no doubt grantee secured an equitable and enforceable title to the
same.   *Fitch v. Gosser,* 54 Mo. 267; *Johnson v. Robinson,* 20
Minn. 189 (Gil. 169).

There is nothing in the record to induce us to believe that
the defendants did not have title to the Missouri land, and in
good faith intended to, and believed they were conveying, such
title to the plaintiffs.   But the complications which arose by vir-
tue of the defect in the deed and the abstract created the woeful
spring from which flowed practically all of the uncertainties and
errors in the procedure which followed.   This being now out of
the way, and plaintiffs, as we assume, being possessed of title to
the Missouri land, there is left for our consideration but two prop-
ositions:   First, whether or not the evidence introduced, viewing
it in the light of the verdict, and giving to it the same weight
and credit given it by the jury, was sufficient to sustain an action
for fraud and deceit; and, second, whether or not the instruction
on the measure of damages in such a case was correct.   We will
consider these in the order suggested.

The case of plaintiffs rests almost entirely upon the evidence of J. W. Martin. The evidence shows that, at the time of the exchange of properties, he was about 72 years of age, residing on a farm in Woodward county, Okla.; that he was slightly acquainted with J. W. Carter, who lived in that vicinity, who approached him with a proposition to trade his farm in Woodward county for a tract of land of 80 acres, owned by the defendants, in Texas county, Mo. Martin signified a willingness to make the exchange. Carter was acting as the agent for the Howes, and admitted that he had no personal knowledge of the character or grade of the Missouri land, and so informed Martin. He, however, as Martin testifies, described the land as being a nice smooth piece, and having a good-hewed log house on it, and a good stable and corncrib, and a good log chicken house, and between 30 and 35 acres fenced with a good 8-rail stake and rider fence, a good orchard of 6 acres, and two good springs on it. He showed plaintiff a piece of paper that had all of the improvements marked down that he asserted were on the land and told him that "Howe went down there a year ago this fall, and had a car load of apples picked off of the place, and had them shippel to Gage"; that he had bought them himself out of the car at Gage. It appears from the evidence that neither Martin, Carter, nor Howe had seen the land, but it does not appear, according to Martin's testimony, that he knew that Howe had not seen it. He testified that, from the way Carter spoke, he supposed that Howe had seen it, and that he supposed Howe had described it to him (Carter) although he (Carter) did not tell Martin this. The plat purporting to contain markings showing the location of the improvements on the land, taken in conjunction with this testimony of Martin's, was evidently an important piece of evidence, and doubtless exercised a potent influence on his mind. The origin of this plat is disclosed in the following cross-examination of Carter, the agent:

"Q. You had a piece of paper that the house and orchard were marked on that you showed Mr. Martin? Q. Have you got that piece of paper? A. No, sir. Q. When did you see it last? A. Three or four days ago. Q. In whose possession was it at that

time? A. I think it is at this man's office. Q Who brought it there? A. T had it myself. Q. You had it all the time? A. Yes, sir. Q. Now, you also had that letter that you received from Howe that you say you read to Martin? A. I don't know whether I had that letter or not. Q. This piece of paper that you had showed a house on it? A. Yes, sir. Q. And orchard? A. Yes, sir; where was it marked. Q. Just marked 'Orchard? A. Yes, sir. Q. It showed the cultivated land on it? A. It didn't show that, that I know of. Q. Who prepared that plat? A. Howe. Q. And sent it to you? A. He sent it to me. I wrote him to give me a description of the land, and he sent it to me."

The land was shown to be practically devoid of improvements and of little value. In our judgment, taking the foregoing testimony as true, in conjunction with the fact that Martin, who made the trade, testified that he believed it and relied on it, and it is shown to be the only knowledge he had; that it was these representations presented to him by Carter which induced him to make the trade—all make out on his part, when shown to be false, a *prima facie* case, supporting an action for damages for deceit, when taken in conjunction with the fact that they were made for a principal by an agent on representations not warranted by his (the principal's) information, even though he may have believed them true. The burden in such a case to show justification for the statements is on the defendant after their falsity is established. *Griswold v. Gebbie*, 126 Pa. 353, 17 Atl. 673, 12 Am. St. Rep. 878. In such a case the assertions and representations of the agent are the representations of the principal, and, without reference to how honestly the agent may have acted, or to what extent he in good faith believed the information given him by his principal to be true, if the statements made to, relied upon, and believed by, the injured party were material, worked him detriment, and were false, then, within the scope of the rule above announced, the party for whom they were made will be held to make them good, or be held liable for the damages incurred as a result thereof.

Our statute on this matter is clear and explicit. Section 14,

art. 1, c. 15 (paragraph 743) Wilson's Rev. & Ann. St. Okla. 1903, provides, in part, as follows:

"Actual fraud, within the meaning of this chapter consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract: First. The suggestion, as a fact of that which is not true, by one who does not believe it to be true. Second. The positive assertion in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true."

Section 105, art. 5, of the same chapter (paragraph 834) provides as follows:

"One who wilfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

Section 106, art. 5, c. 15 (paragraph 835), provides as follows:

"A deceit, within the meaning of the last section, is either: First. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true. Second. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true."

It is under the provisions of the foregoing sections of our statute that plaintiffs on this branch of the case claim their right to recover. It will be observed that, in paragraph 834, *supra,* the language of the act is "One who wilfully deceives another with intent," etc,. and our statute (section 767, art. 59, c. 25 [par. 2686]), provides: "The term 'wilfully' when applied to the intent [with] which an act is done or omitted, implies simply a purpose or willingness to commit the act or the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage."

Paragraph 743, is identical with section 1572 of the Civil Code of California, found at page 1283, 2 Kerr's Cyclopedic Codes of California. The other provisions are likewise counter parts of similar provisions of the California laws. It and they have received construction at the hands of the California Supreme Court

in numerous cases, of which attention is called to a few: *Groppengiesser v. Lake,* 103 Cal 37, 36 Pac. 1036; *Muller v. Palmer,* 144 Cal. 305, 77 Pac. 954; *Mayer v. Salazar,* 84 Cal. 646, 24 Pac. 597; *Alvarez v. Brannan,* 7 Cal. 504, 68 Am. Dec. 274; *Hanscom v. Drullard,* 79 Cal. 234, 21 Pac. 736; *Barbour v. Flick,* 126 Cal. 628, 59 Pac. 122; *Estate of Johson,* 134 Cal. 662, 66 Pac. 847.

The case of *Groppengeisser v. Lake, supra,* was like the case at bar, one wherein there was involved a question of fraud and deceit on the part of a vendor of land. In that case the seller of the land represented that he had never seen it. The only information possessed by the purchaser was such as the vendor gave him. The court said in the syllabus:

"Upon a contract for the sale of land, where the statements of the vendor constituted all the knowledge possessed by the purchaser as to the subject-matter of the sale, and such representations are false in material respects, the purchaser, acting promptly, may rescind the contract of purchase. Where the statements of the vendor constitute all the knowledge possessed by the purchaser as to the subject-matter of the sale, it is immaterial that the vendor had not personally seen the land, or did not know that what he stated was untrue, or that he believed it to be true. It is actual fraud for a vendor to state as true that which he does not know to be true, intending that the purchaser should act upon it, and to enter into the contract knowing that the purchaser did so in reliance upon his statements; he not having other means of knowledge."

In the discussion of the case the court amplified the statements contained in the syllabus as follows:

"He told plaintiff at the first interview that he (defendant) had never seen the land. This statement, being uncontradicted, may be taken as true. Upon these facts is defendant entitled to a new trial? That the representations were as to material matters, such as were calculated, and were plainly intended, to induce the plaintiff to purchase the land, there can be no doubt. Neither can there be any doubt that the representations did induce plaintiff to enter into the contract, and that defendant then knew that plaintiff relied solely upon his statements. Even upon defendant's own testimony this is so. The representations, according to plaintiff's testimony, were positive assertions as to matters

which are not mere matters of opinion. He was told, in effect, that nearly all of the land could be used, except 2 or 3 acres, which, on account of ravines, would be useless; that it was suitable for a fruit ranch, and was wooded all over as shown in the photographs. As those are not brought here, the presumption must be that they would tend, so far as possible, to support the judgment and order. These statements there was testimony tending to show were not true. But it is said the defendant informed plaintiff that he had never seen the land himself, and therefore plaintiff knew that he was only relating what he had heard from others. But there was a great show of care on the part of defendant to ascertain the facts. His employes had personally examined it, had surveyed it, and photographed portions of it; had even sent him some of the soil. Defendant does not say that he told plaintiff that his entire knowledge in reference to the tract was derived from the documents shown him. If he had so stated, the effect would have been only to limit the representations to what appeared from these papers. It does not matter that defendant did not know that what he stated was untrue, or that he believed it to be true. According to the testimony, his statements constituted all the knowledge possessed by plaintiff as to the subject-matter of the sale. As they were untrue in material respects, the plaintiff, acting promptly, may rescind. Civ. Code, § 1572; *Alvarez v. Brannan*, 7 Cal. 503, 68 Am. Dec. 274; *Bank of Woodland v. Hiatt*, 58 Cal. 234. See, also, 2 Pomeroy's Equity Jurisprudence, § 887."

In the consideration of the case of *Muller v. Palmer, supra*, the court said:

"Actual fraud in committed where one, with intent to induce another to enter into a contract, makes a positive assertion, in a manner not warranted by the information of such person, of that which is not true, even though he believes it to be true. Civ. Code, § 1572. One who gains a thing by fraud is, unless he has some other and better right thereto, an involuntary trustee of the thing gained for the benefit of a person who would otherwise have had it. Civ. Code, § 2224. It was held in *Alvarez v. Brennan*, 7 Cal. 504, 68 Am. Dec. 274, that, where a vendor, supposing himself to be the owner of a lot, represented that he was such owner, and sold the lot to the vendee for $6,000, the vendee, upon discovering that the lot had been previously sold to another party, might rescind, and recover the money paid. It is said in the opinion: 'But it is equally true that, whether a party thus mis-

representing a material fact knew it to be false, or made the assertion without knowing whether it were true or false, is wholly immaterial. If a party asserts that as true which he does not know to be true, it is a false representation. If he intends simply to state his belief upon information, then he should state it in that precise form so as to apprise the other party of the true grounds upon which his statement is made. A party will always be held to make good his statement in the form in which he makes it. If he states a thing as true in general terms without qualification, then he is presumed to do so upon his own knowledge, or at his own peril, and must make good his assertion.' And the same rule is laid down by all the authorities. 1 Story on Equity Jurisprudence, §§ 193, 193a, and note; 2 Pomeroy's Equity Jurisprudence, § 887. It is said by Pomeroy in the section cited: 'It is settled in equity, by an overwhelming array of authority, that where a person makes a statement of fact which is actually untrue, and he has at the time no knowledge whatever of the matter, he is chargeable with fraud, and his claim to have believed in the truth of his statement cannot be regarded as at all material. The definite assertion of something which is untrue concerning which the party has no knowledge at all is tantamount in its effects to the assertion of something which the party knows to be untrue.' "

Hence, as we have heretofore said, and as we have seen, the statements made by Howe to his agent Carter, and at his instance by Carter to Martin, were made with intent to induce Martin to enter into the contract which he did; and, when Howe presented Carter, his agent, with the plat of the farm showing the purported improvements thereon, and authorized Carter to present this to the prospective customer as containing a showing of the condition of the land, which showing was in fact not true, if plaintiff possessed no other information, and relied and acted upon these positive representations to his detriment, then the maker thereof is liable, even though he may have believed them to be true, where it is not shown the statements made were warranted by the information possessed by the maker, or that he had reasonable ground for any such relief.

Exceptions are taken to the instructions given by the court on this subject, but we will not critically review or examine the

same, by reason of the fact that the case must be reversed upon another ground, and in 'our judgment what is here said in reference to the duty towards the plaintiff on the part of defendants will be sufficient, with the authorities cited, to obviate any difficulty in an instruction on this ground, should there be further trial of the cause.

Nor in our judgment were the plaintiffs precluded from recovery by virtue of the fact that they relied upon these statements, and failed, prior to making the trade, to travel to Missouri and inspect the land. *Stevens et al. v. Allen*, 51 Kan. 144, 32 Pac. 922; *Matlack v. Shaffer et al.*, 51 Kan. 208, 32 Pac. 890, 37 Am. St. Rep. 270.

We now come to the consideration of the instruction on the measure of damages, which the court, under that theory presented by plaintiff's petition of a repudiation and rescission of the trade, ruled was the value of plaintiff's homestead at the time of the exchange; but, in view of the conclusion to which we have arrived that no adequate tender or rescission was ever made, and in view of the prayer for reformation, consistent only with affirmation, the rule laid down for the measure of damages in such a case was erroneous. Plaintiffs' petition was filed by their counsel, with such light as he then possessed. As the case presented itself to him, defendants had no title to the Missouri land, and it appeared at least doubtful if they had safely conveyed it to plaintiffs, even if they possessed it. They had, prior to the date of the bringing of this action, disposed of plaintiffs' property, and there was the hazard of their being unable to respond to plaintiffs for its value. In the complication thus presented counsel tried to hold onto what his clients had, if they had anything, fearing the insolvency of defendants, and yet the Missouri land was of such a character that plaintiffs did not want it at all if defendants could be compelled to respond in damages. Counsel's efforts to thus secure for his clients the benefits of all of these remedies, while commendable, yet, for reasons inherent in their nature, could not all succeed, for it is a truism that if a man successfully ride two

horses at the same time, both must travel the same, and not opposite, directions. Plaintiffs could not hold onto what they had, and at the same time release it. They must have elected which of these remedies they would invoke, and their election determined the measure of their damages.

The available alternatives presenting themselves to plaintiffs are well expressed in the syllabus to the case of *Vail v. Reynolds,* 118 N. Y. 297, 23 N. E. 301, wherein the highest court of that state said:

"It seems a person induced by fraudulent representations to purchase property has three remedies. He may, upon discovery of the fraud, rescind the contract absolutely, and sue in an action at law to recover the consideration parted with upon the fraudulent contract, but he must first restore, or offer to restore, to the party sued whatever he has received by virtue of the contract. He may bring an action in equity to rescind the contract; and, as such action is not founded upon a rescission, but to obtain one, it is sufficient for the plaintiff to offer in his complaint to return what he has received, and make a tender of it on the trial. He may retain what he has received, and bring an action at law to recover the damages sustained, the measure of which is the difference between the value of the article sold and what it should be if as represented."

The rule of damages there laid down is the same as that annunciated in volume 3 (8th Ed.) § 1027, of Sedgwick on Damages:

"In such actions, as in actions for fraud in the sale of chattels, it has usually been held that the measure of damages is the difference in value between the land as it would have been if as represented and as it actually was."

In this rule the author is sustained by an overwhelming weight of authority, of which we take note of the following cases:

*Augor v. Smith,* 90 Tenn. 729, 18 S. W. 398; *Drew v. Beall,* 62 Ill. 164; *Nysewander v. Lowman,* 124 Ind. 584, 24 N. E. 355; *Gustafson et ux v. Rustemeyer,* 70 Conn. 125, 39 Atl. 104, 39 L. R. A. 644, 66 Am. St. Rep. 92; *Krumm v. Beach et al.,* 96 N. Y. 398; *Page v. Wells,* 37 Mich. 415; *Wright v. Roach,* 57 Me. 600; *Lynch et al. v. Mercantile Trust Co.* (C. C.) 18 Fed.

486; *Matlock v. Reppy*, 47 Ark. 148, 14 S. W. 546; *Herfort v. Cramer*, 7 Colo. 483, 4 Pac. 896; *Stiles v. White et al.*, 11 Metc. (Mass.) 356, 45 Am. Dec. 214; *Williams v. McFadden*, 23 Fla. 143, 1 South. 618, 11 Am. St. Rep. 345; *Barbour v. Flick*, 126 Cal. 628, 59 Pac. 122.

In further discussion of this rule the Court of Appeals of New York, in the case of *Krumm v. Beach et al.*, *supra*, speaking through Justice Finch, said:

"The learned judge charged that the damages recoverable would be the difference between the value of the land conveyed and the value of that which would have passed had the representations been true. * * * The contention of the appellants is that the defrauded vendee had but one remedy, and that consisted of a rescission of the contract, and a recovery back of the consideration paid, after an offer to reconvey and a tender of what had been received. Doubtless this remedy existed, but the vendee was not compelled to adopt it. He had a right, instead of rescinding the contract, to stand upon it, and require of the vendor its complete performance, or such damages as would be the equivalent of that complete performance. The vendee, acting honestly on his own part, was entitled to the full fruit of his bargain, and could not be deprived of it without his consent by the fraud of the vendor. That such an action, proceeding upon an affirmance of the contract as actually made, founded upon actual fraud, and asking damages in the room of an impossible specific performance, can be maintained at law has been sufficiently adjudged. *Wardell v. Fosdick*, 13 Johns. (N. Y.) 325, 7 Am. Dec. 383; *Culver v. Avery*, 7 Wend. 386, 22 Am. Dec. 586; *Whitney v. Allaire*, 1 N. Y. 305; *Clark v. Baird*, 9 N. Y. 187; *Graves v. Spier*, 58 Barb. (N. Y.) 385. And that is so whether the representations relate to the title or to matters collateral to the land. The measure of damages in such a case is full indemnity to the injured party— the entire amount of his loss occasioned by the fraud. *Dimmick v. Lockwood*, 10 Wend. (N. Y.) 155; *Wardell v. Fosdick* and *Whitney v. Allaire*, *supra*. The first of these cases plainly points out the difference between actions for a breach of covenant and those founded upon fraud. In the former the damages are always bounded by the consideration and interest, which often fall short of full indemnity—a rule said to be founded 'upon considerations of public policy, without reference to the actual damages sus-

tained by the party' (*Whitney v. Allaire, supra*); but, where fraud is established, full and complete indemnity is awarded. That full indemnity may go beyond the consideration paid. The purchaser of land, as of other property, has a right to make a good bargain, if he can, provided only that he deals honestly. Often the profit secured above the price paid is the sole motive for the purchase; and, where there is an exchange of lands to some extent, one dealing fairly may sell his own at a high price, and secure another's at a low one. To the entire benefit of his bargain he is entitled. If there had been no fraud, he would have had it. He should not lose it because the other party has been dishonest. The measure of damages, therefore, should be that adopted by the court below, the difference in value between the property conveyed and that which would have been conveyed had the property been as represented and the actual contract honestly fulfilled."

And the foregoing appears to be the rule where an exchange of land for stock in a corporation was made, and no specific price was made upon either, just as the exchange in this case appears to have been made without any specific money valuation being placed on either tract. *Nysewander v. Lowman,* 124 Ind. 584, 24 N. E. 355; 11 American & English Ency. of Law, p. 574.

We do not mean of course, to hold herein that plaintiffs are precluded from assailing the title purported to be conveyed to them in their deed from the defendants. If the title tendered by defendants to plaintiffs fails in any particular whereby plaintiffs have a cause of action, the same will in no wise be interfered with by this judgment, but we do hold that the prayer of plaintiffs asking for a reformation of the deed which they received precluded them from objecting when their grantors tendered them just such a deed as the court, exercising its fullest powers, could possibly have secured for them. The elimination of this question reduces the case to simply one for damages for fraud and deceit, with the measure of damages as here stated, and on a new trial thereof the pleadings should be reformed to submit just this controversy for the consideration of the court and jury.

The cause is remanded to the lower court, with instructions

to set aside the judgment heretofore rendered and grant defendants a new trial.

All the Justices concur.