### NEWTON *v.* TOLLES.
### TOLLES *v.* NEWTON.

A vendee who enters into an executory contract for the purchase of a farm relying upon the vendor's statement that it contains a materially greater number of acres than is the fact, may be relieved in equity by a rescission of the contract, though there is no fraud on the part of the vendor.

BILL IN EQUITY, filed October 20, 1886, for the rescission of a contract for the purchase of a farm and other property, and for the return of money paid as a part of the purchase-money. Facts found by the court.

The defendant, Sophia A. Tolles, employed R, a real estate agent in Nashua, to sell her farm. In May, 1886, Newton, seeking to buy a farm, applied to R, who informed him of the Tolles farm, told him it contained two hundred acres, took him to see it, and there pointed out to him such of the corners and boundaries as he knew; but he did not know, or undertake to point out, all of them. Afterwards R, as agent of Tolles, and Newton executed an agreement by which Tolles agreed to sell, and Newton to buy, the " Tolles farm " for $5,400, to be paid, $200 on the execution of the agreement, $1,000 on the delivery, on or before June 1, 1886, of a bond for a deed, $1,000 on or before July 10, 1886, and $3,200 on the delivery, on or before October 20, 1886, of a good and sufficient deed. " Said Newton to have all the stock, tools, hay, grain, etc." On the margin of the agreement, " Farm contains about 200 acres " was written. Newton paid $200 May 15. Tolles executed and delivered to Newton a bond, conditioned to convey to him " a certain lot or parcel of land situated in Nashua," and particularly described by metes and bounds, " meaning and intending to convey all the homestead farm, containing about two hundred acres, as by deed of heirs of Horace C. Tolles to me, and all other land and right in said homestead farm," upon Newton's payment of

$1,000 on the delivery of the bond, $1,000 on or before July 10, 1886, and $3,200 on the delivery, on or before October 20, 1886, of a good and sufficient deed. On the margin of the bond was written,—" It is agreed, for the above consideration, that said Newton is to have all the stock, tools, hay, grain, etc., and that said Tolles is to remove only household furniture and family stores from said premises."

Prior to 1879 the Tolles farm comprised about two hundred and three acres, of which the defendant and her husband owned a part in common, and each a part in severalty. In that year the heirs of Horace C., then deceased, conveyed a parcel of about twenty-five acres to Xenophon Tolles, and all their interest in the rest of the farm to the defendant. In January, 1886, the defendant sold about eighteen acres to C, who sold to Roby. A parcel of about twenty-five acres, called the "Salmon Brook meadow," was half a mile distant from and had no connection with the rest of the farm except in its use as a part of it. These parcels were not shown to Newton by R, and are not covered by the particular description given in the bond. Newton, at the time of the bargain, did not understand that they were included in his purchase; but he understood he was buying the Tolles farm, and that it contained two hundred acres. The defendant did not intend to convey, nor understand that she agreed to convey, the three parcels, or any one of them; but she understood and believed that the farm as described in the bond contained about two hundred acres. It in fact contains only one hundred and thirty-five acres.

In June, 1886, Newton discovered that Tolles owned the Salmon Brook meadow, and learned of its connection with the farm. He thereupon claimed possession of it, and that it was included in the bargain, but his claim was denied. He refused to pay the instalment due July 10, and August 21 Tolles brought a suit at law to recover it, which is the second of the above named actions. About the first of August, Newton found, by a survey, that the farm as described in the bond contains only one hundred and thirty-five acres. October 20, 1886, Tolles tendered to Newton a warranty deed of the premises of which he is in possession, and demanded payment of the balance of the purchase-money. Newton refused to accept the deed, and on the same day filed his bill, in which he offers to restore the real and personal property to the defendant, give up and cancel the bond, and to account for the rents and profits while he has been in possession. He has consumed the hay and grain, but has other hay and grain out of which he can return an equivalent. He sold four cows in August, but replaced them with four others of greater value. The farm has not deteriorated in value.

Evidence to show that the property which Tolles by her bond was obligated to convey was of the value of $5,400 or more was excluded, subject to the defendant's exception.

*G. B. French* and *H. B. Atherton*, for Newton.

*C. W. Hoitt* and *E. S. Cutter*, for Tolles.

CARPENTER, J. There was a mutual mistake in the quantity of land. The defendant understood she was selling, and the plaintiff that he was buying, a farm of two hundred acres. It in fact contains only one hundred and thirty-five acres. The defendant, believing that the farm contained two hundred acres, informed the plaintiff that it did contain that number. The plaintiff relied on her statement. Under the influence of the error common to both parties the transaction was consummated. The mistake was one of fact, in a material point affecting the value of the property. *Boynton* v. *Hazelboom*, 14 Allen 107, 108. Its prejudicial consequences to the plaintiff are the same as if the defendant's statement had been designedly fraudulent. *Spurr* v. *Benedict*, 99 Mass. 463, 467. The deficiency is so great that it would " naturally raise the presumption of fraud, imposition, or mistake in the very essence of the contract " if the mistake were not affirmatively found. *Stebbins* v. *Eddy*, 4 Mason 414, 420. A material mistake in the quantity does not, in its effect upon the equitable rights of the parties, differ from a like mistake in the character, situation, or title of the bargained property. It is equivalent to a mistake in the existence of a material part of the subject of the contract. The case is as if, before the contract was executed and without the knowledge of either party, a parcel containing sixty-five acres of the two hundred contracted for had sunk in the sea. *Allen* v. *Hammond*, 11 Pet. 63, 71, 72; *Hitchcock* v. *Giddings*, 4 Price 135; Sto. Eq. Jur., ss. 141, 142. The error is as injurious to the plaintiff as if two hundred acres were comprised in the stated boundaries and the defendant had no title to a parcel of sixty-five acres, or as if she had title to only one hundred and thirty-five two-hundredths of the whole in common with a stranger. *Hooper* v. *Smart*, L. R. 18 Eq. 683. The defendant could not sustain a bill to compel a specific performance of the contract by the plaintiff, because it would be inequitable. *Pickering* v. *Pickering*, 38 N. H. 400, 407, 408 ; *Eastman* v. *Plumer*, 46 N. H. 464, 479. The party against whom a contract, made under a mutual mistake of material facts, will not be specifically enforced, is in general entitled to rescind. Pom. Spec. Perf., s. 250. If there are exceptions to the rule, this case does not fall within them. It is inequitable that the defendant, by reason of her negligent and erroneous, though not fraudulent, representation, should make a profit of the sum at which the parties valued sixty-five acres of land, and that the plaintiff without fault on his part should lose that sum. Equity will prevent such a result by rescinding the contract or decreeing a specific performance with compensation in behalf of the injured party, at his election, and by refusing specific performance on the application of the other

party.  *Hill* v. *Buckley*, 17 Ves. 394; *Price* v. *North*, 2 Y. & C. Ex. 620; *Dalby* v. *Pullen*, 3 Sim. 29; *Leslie* v. *Tompson*, 9 Hare 268; *Barnes* v. *Wood*, L. R. 8 Eq. 424; *Whittemore* v. *Whittemore*, L. R. 8 Eq. 603; *Aberaman Ironworks* v. *Wickens*, L. R. 4 Ch. 101; *Denny* v. *Hancock*, L. R. 6 Ch. 1; *Torrance* v. *Bolton*, L. R. 8 Ch. 118; *In re Turner*, 13 Ch. Div. 130; *Belknap* v. *Sealey*, 14 N. Y. 143; *Paine* v. *Upton*, 87 N. Y. 327; *Couse* v. *Boyles*, 4 N. J. Eq. 212; *Thomas* v. *Perry*, Pet. C. C. 49; *Daniel* v. *Mitchell*, 1 Story 172; *Doggett* v. *Emerson*, 3 Story 700; *Smith* v. *Babcock*, 2 Wood. & M. 246; *Quesnel* v. *Woodlief*, 2 Hen. & M. 173; *Lawrence* v. *Staigg*, 8 R. I. 256; *Noble* v. *Googins*, 99 Mass. 231. Neither of the parties understood that the contract to convey "about" two hundred acres was performed by conveying one hundred and thirty-five acres.  *Wilson* v. *Randall*, 67 N. Y. 338, 341, 342, and cases above cited.

No laches can be imputed to the plaintiff.  He had a right to rely on the defendant's statement of the quantity.  He could not discover the mistake by examining the external boundaries.  *Paine* v. *Upton*, 87 N. Y. 327, 337.  When, by the defendant's tender of a deed and demand of payment, he ascertained that she would not voluntarily correct the mistake, he immediately filed his bill.

The personal property formed no substantial part of the consideration.  It is not named in the body of the bond, but is mentioned apparently as an afterthought on the margin.  Upon the rescission of a sale of farm lands by a vendee in possession, there must, in most cases, necessarily be an accounting in order to restore the parties to the situation they occupied prior to the contract.  Upon such an accounting all the property, the possession of which passed from the defendant to the plaintiff, or its full equivalent, together with the income derived from it, may be fully restored to her.  It is no objection to a rescission in a case of this character that such articles as are necessarily consumed in the proper and ordinary management of a farm cannot be restored in specie.  It does not appear that the plaintiff, after his discovery of the mistake, took any action by which he intended to affirm the contract (*Montgomery* v. *Pickering*, 116 Mass. 227), or that he did anything with the property not reasonably necessary for its preservation, or which equity would not require to be done. The plaintiff is to be relieved upon such terms as justice to both parties requires.  *Wiswall* v. *Harriman*, 62 N. H. 671, 672; 2 Sto. Eq. Jur., *s.* 707.  The offered evidence of value was immaterial, and was properly excluded.  In the suit at law there must be judgment for the defendant.  The details of the decree will be settled at the trial term.

*Decree for the plaintiff.*

ALLEN, J., did not sit: the others concurred.