# BURKE v. SMITH.

No. 6349.    Opinion Filed April 11, 1916.

(157 Pac. 51.)

1.  **VENDOR AND PURCHASER—Construction of Contract—Sales in Gross.** Sales of real estate in gross are properly divided into four classes: First, sales strictly and essentially by tract, without reference in the negotiation or in the consideration to any estimated or designated quantity of acres; second, sales of the like kind, in which, though a supposed quantity by estimation is mentioned or referred to in the contract, the reference was made only for the purpose of description, and under such circumstances or in such manner as to show that the parties intended to risk the contingency of quantity, whatever it might be, or how much so ever it might exceed or fall short of that which was mentioned in the contract; third, sales in which it is evident from extraneous circumstances of locality, value, price, time, and the conduct and conversations of the parties that they did not contemplate or intend to risk more than the usual rates of excess or deficit in similar cases, or than such as might be reasonably calculated on as within the range of ordinary contingency; fourth, sales which, though technically deemed and denominated sales in gross, are, in fact, sales by the acre, and so understood by the parties. Contracts belonging to either of the two first-mentioned classes, whether executed or executory, should not be modified by the chancellor when there has been no fraud.

2.  **SAME—Remedies of Purchaser—Nature and Form.** A person induced by false and fraudulent representations to purchase or exchange for property has three remedies. He may: First, upon discovery of the fraud, rescind the contract absolutely, and sue in an action at law, and recover the consideration parted with upon the fraudulent contract, and in such case he must restore, or offer to restore, to the parties sued whatever he has received by virtue of the contract; or, second, he may bring an action in equity to rescind the contract, and in such case it is sufficient for plaintiff to restore, or make offer in his petition to restore, everything of value which he has received; or, third, he may affirm the contract, retain that which he received, and bring an action at law to recover the damage sustained by reason of his reliance upon the fraudulent representations.

3.  **APPEAL AND ERROR—Presenting Question in Lower Court—Form of Action.** Where the parties treat the action in the court

below as one at law, on appeal the case will be treated as one at law by the Supreme Court.

4.    **TRIAL—Taking Case From Jury—Direction of Verdict.** In an action at law, where there are controverted questions of fact necessary for a determination of the case, it is error to direct a verdict.

5.    **EVIDENCE—Documentary Evidence—Authentication.** Same as Comanche Merc. Co. v. McCall, 52 Okla. 782, 153 Pac. 675.

(Syllabus by Burford, C.)

*Error from Superior Court, Pottawatomie County; George C. Abernathy, Judge.*

Action by L. J. Smith against J. R. Burke. Judgment for plaintiff, and defendant appeals. Reversed.

*J. H. Woods* and *West, Hull & Hagan,* for plaintiff in error.

*Paul F. Cooper* and *Edward Howell,* for defendant in error.

Opinion by BURFORD, C.   L. J. Smith sued J. R. Burke, alleging, in substance, that he bought a tract of land from Burke through one Owenby, "purporting to act as agent of plaintiff," and that he paid $1,000 as part of the purchase price. He further alleged, as his first cause of action, that Burke and his agents (without naming them) made representations that the tract contained about 40 acres, intending that such representations should reach plaintiff; that said representations were communicated to plaintiff and acted upon by him in the purchase of the land; that said land contained only 19 and a fraction acres; that his consent to the contract of sale was given by mistake; and that upon discovering the amount of the land contained in the tract he disaffirmed the contract and demanded the return of his money, which was refused, and he was entitled to rescind and to recover $1,000,

whether defendant knew the number of acres in said tract or not. He further alleged that he had never had possession of the land and offered to execute a quit-claim deed. The allegations of the second cause of action are largely the same as those of the first, except that it is alleged in the second cause of action that the defendant (no reference being made to any agent) made the representations and that they were false, and when made were to the defendant known to be false.

Answering, the defendant denied that he made any representations whatever in regard to the acreage of the tract of land sold, and alleged that he did not know what it contained, and by way of cross-petition asked for a recovery of the balance of the purchase price due. Upon a trial a jury was called, without objection, and the evidence of both sides adduced. There was much testimony pro and con touching upon the question of whether Owenby was the agent of the plaintiff or of the defendant. At the close of the testimony counsel for plaintiff moved for a directed verdict, and the court instructed the jury to return a verdict for the plaintiff for $1,000, to be made a lien upon the land; defendant to have the land subject to such lien. The verdict was duly returned as directed, and judgment rendered thereon, motion for new trial filed and overruled, and the defendant brings the cause here for review. The trial court directed the verdict upon the theory, as stated by him:

That there was "no contradiction that Mr. Owenby was acting as agent for Mr. Burke in the sale of this land, and that Mr. Owenby in good faith represented to the plaintiff that there were approximately 40 acres in the tract, and that the plaintiff was induced to enter into the contract, as a result of which he paid $1,000 to the de-

fendant; that the representations as to the quantity of the land were untrue. * * *. The evidence further shows that Mr. Owenby only became the agent of the plaintiff in this case for one purpose, and that was the execution of the contract after the plaintiff had been induced to accede to the terms of the contract by representations made by Mr. Owenby as agent of the defendant, Burke. The court desires to state to you that it does not think there is any evidence of bad faith on either side, but it is one of those cases where a mistake has been made, under which the court is of the opinion the plaintiff is entitled to rescind the contract and recover the money he has paid."

It is not seriously contended by either party that the judgment of the trial court can be supported upon the reasons given by him. The evidence tended to show that Owenby, a real estate agent in Shawnee, had a conversation with R. J. Burke, father of the defendant, John R. Burke, in which the father asked Owenby to sell certain land for him, including that here involved, and gave him a written list, purporting to be signed by John R. Burke, which contained a description of the land conveyed and the words "containing 40 acres more or less." There was some evidence tending to show that John R. Burke, the defendant, might have known that his father had assumed to list this land with Owenby, and had made no objection thereto. The evidence further tended to show that Owenby had taken up the proposition with L. J. Smith, and that during the course of the negotiations he had represented to Smith that the tract contained 40 acres more or less; that he and Smith's brother had had a conversation with the elder Burke, in which he told them, in substance, that he would guarantee that the area of the tract would not vary from 40 acres more than one acre. During the course of the negotiations, however, Owenby's status as agent for

John R. Burke (if he was ever such) undoubtedly changed to that of agent for the purchaser, Smith. The case presents the wholly improper and anomalous situation of one person attempting, at various times, to act as agent for two opposing parties, or at least asserting that he so acted. The testimony showed that the relations between Owenby and Smith were very intimate, and that Owenby had been acting for Smith in other matters. It appeared that during the course of the transaction Owenby and Smith's brother, who at no time was the agent of any one but Smith, went to the tract of land and endeavored to ascertain its acreage by stepping off the boundaries, and that Owenby wrote Smith that he would "report" to him the exact acreage, and later he advised him that there were 47 acres or more. He also, in one of his letters to Smith, uses the language "if we can close the deal with him." Smith upon his examination was asked the following question: "And Owenby and your brother were looking after the deal for you?" To which he replied: "Yes, sir; kind of looking out for it." Later, in response to a very leading question, he attempted to somewhat modify this answer. The record also shows that in the letter to the bank where the deed and money were deposited, he referred to "Mr. M. K. Ownby, who made the deal for me." The evidence further showed that, having finally agreed upon a price, a written contract of sale was entered into by Burke upon the one side and "M. K. Owenby, agent," on the other. It is conceded that in this transaction of the contract Owenby acted for Smith. Thereafter Burke paid Owenby a commission for making the deal. It thus appears that the relationship of Owenby to the transaction was inextricably mixed, and that whether or not he was acting for Smith or Burke at any particular time could

not be found, as the court said, upon uncontradicted evidence. The evidence further tended to show on behalf of the defendant that Owenby and Smith's brother had come to him and asked how many acres there were in the tract, and that he told them positively that he did not know, and that they would have to go and measure it for themselves, and possibly it was in response to this that they did attempt to make a measurement.

Upon this state of facts it is urged by the defendant in error that, although the trial court may have given a wrong reason for his judgment, the judgment was right, and ought not be reversed. Undoubtedly, if we could ascertain from undisputed facts that a proper judgment had been rendered, we would not set it aside because the trial court gave a wrong reason for it (*Homeland Realty Co. v. Robinson*, 39 Okla. 591, 136 Pac. 585), but we are not called upon to sustain a judgment in a case at law where the proper issues of fact have not been submitted to the jury, nor in an equity case, where we do not have the benefit of the findings of fact by the chancellor upon the issues of the case, since this court cannot say ordinarily what the findings of the chancellor might have been upon disputed facts, where he has decided the case upon a wrong theory, and has not passed upon the real issues in the transaction. In equity cases we may review the evidence and findings, but we are not disposed to make the necessary findings upon disputed questions of fact in the first instance. It remains to be seen, therefore, if the judgment can be sustained upon undisputed facts. It is urged that it is undisputed that a mistake was made, and that the discrepancy between the amount of the land which the plaintiff believed he bought and the amount which was

actually conveyed by the deed to him is so great as to shock the conscience of the court. It is to be noted that there is no suggestion, either in the pleadings or the briefs, that the discrepancy in the land was so great as to amount to a failure of consideration, but the plaintiff depends as to his first cause of action upon mistake.

The contention of the plaintiff is met by the assertion that mistake cannot be predicated upon the sale of a tract of land "in gross." Both the contract and the deed in this transaction referred to "lots 2 and 3 in section 29, township 10 north, range 4 east." Neither the contract nor the deed contained any reference to the amount of acreage. The adjudicated cases upon sales in gross and contracts of hazard are legion, and almost every phase of the question can be supported by some adjudicated case. In the end the principle of each case must be deduced from the particular facts there involved. The underlying principle appears to be that, where parties contract for the transfer of real estate by metes and bounds or description only, and there is no mistake as to the boundaries or guaranty of the acreage or extent of the tract, they must ordinarily be presumed to have each taken the hazard as to the quantity embraced in the tract of land, and there can be no relief, whether there be either an excess or a deficiency. In many cases relief has been refused where the discrepancy is even much larger than that in the instant case. On the other hand, the courts have ingrafted upon this principle many distinctions, some based upon the question as to whether or not the action was one at law or in equity, some upon the intent of the parties, and some upon the greatness of the discrepancy, etc.

The underlying principle is stated in *Morris Canal Co. v. Emmett,* 9 Paige (N. Y.) 168, 37 Am. Dec. 388, in which it is said:

"Where there is a sale of land *per aversionem,* or at a gross sum for the whole premises, and not at a specified price by the foot or acre, the purchaser is entitled to the land contained within the designated boundaries of his grant, be it more or less; without reference to any quantity or measure of the premises as mentioned in the contract or conveyance. And, where there has been no fraud or misrepresentation, the purchaser of the land is neither liable for a surplus nor entitled to a deduction for a deficiency in the quantity or measure of the premises, as mentioned in his contract or deed. The cases in which courts of equity interfere to give relief, where the quantity of the lands exceeds or falls short of that which is specified in the deed or contract of sale, are those in which the sale of the land has been made by the acre or foot, or where there has been fraud or willful misrepresentation on the part of the party against whom relief is sought to induce the other party to believe the quantity of land conveyed was different from what it really was."

Among many cases asserting this doctrine are *Winston v. Browning,* 61 Ala. 80; *Green v. Taylor,* Fed. Cas. No. 5761; *Hyde v. Phillips,* 61 Wash. 314, 112 Pac. 257; *Britt v. Marks,* 20 Or. 223, 25 Pac. 636; *Commissioners v. Younger,* 29 Cal. 172; *Bethell v. McKinney,* 164 N. C. 71, 80 S. E. 162; *Norwood v. Washington,* 136 Ala. 657, 33 South. 869; *Lane v. Parsons,* 108 Iowa, 241, 79 N. W. 61; *Erskine v. Wilson,* 41 S. C. 198, 19 S. E. 489; *Tiffee v. Linsley,* 10 Tex. Civ. App. 465, 32 S. W. 80; *White v. Price,* 202 Pa. 128, 51 Atl. 755; *Trinkle v. Jackson,* 86 Va. 238, 9 S. E. 986, 4 L. R. A. 525; *Rich v. Scales,* 116 Tenn. 57, 91 S. W. 50; *Russell v. Keeran,* 8 Leigh (Va.) 18. On the other hand, the decision in *Morris Canal Co.*

*v. Emmett, supra,* has been criticized and distinguished in *Belknap v. Sealy,* 14 N. Y. 143, 67 Am. Dec. 120, and in the following cases somewhat similar to the one at bar relief has been afforded. *Paine v. Upton,* 87 N. Y. 327, 41 Am. Rep. 371; *Newton v. Tolles,* 66 N. H. 136, 19 Atl. 1092, 9 L. R. A. 50, 49 Am. St. Rep. 593; *Drake v. Eubanks,* 61 Ark. 120, 32 S. W. 492; *Hosleton v. Dickinson,* 51 Iowa, 244, 1 N. W. 550; *Skinner v. Walker,* 98 Ky. 729, 34 S. W. 233; *Camp v. Norfleet,* 83 Va. 380, 5 S. E. 374; and *Bigham v. Madison,* 103 Tenn. 358, 52 S. W. 1075, 47 L. R. A. 267. The above are not intended to be by any means a complete review of the cases, but in themselves, and in the cases cited therein, they give a fair exposition of the varying views upon the subject. Upon the whole we are inclined to adopt the view set out in *Harrison v. Talbot,* 2 Dana (Ky.) 259, 266, and approved, in substance, in *Doctor v. Furch,* 76 Wis. 153, 44 N. W. 648, 826, *O'Connell v. Duke,* 29 Tex. 312, 94 Am. Dec. 282, and *Pratt v. Bowman,* 37 W. Va. 715, 17 S. E. 210. In *Harrison v. Talbot, supra,* it is said:

"Sales in gross may be subdivided into various subordinate classifications: First, sales strictly and essentially by the tract, without reference in the negotiation or in the consideration to any estimated or designated quantity of acres; second, sales of the like kind, in which, through a supposed quantity by estimation is mentioned or referred to in the contract, the reference was made only for the purpose of description, and under such circumstances or in such manner as to show that the parties intended to risk the contingency of quantity, whatever it might be, or how much so ever it might exceed or fall short of that which was mentioned in the contract; third, sales in which it is evident, from extraneous circumstances of locality, value, price, time and the conduct and conversations of the parties, that they

did not contemplate or intend to risk more than the usual rates of excess or deficit in similar cases, or than such as might be reasonably calculated on as within the range of ordinary contingency; fourth, sales which, though technically deemed and denominated sales in gross, are, in facts, sales by the acre, and so understood by the parties. Contracts belonging to either of the two first-mentioned classes, whether executed or executory, should not be modified by the chancellor when there has been no fraud."

Applying this classification to the case at bar, it appears that it might be found from the testimony, and especially that of the defendant, that the contract falls within subdivisions 1 and 2, above quoted; while from the testimony of plaintiff it might be found that the contract falls within subdivision 3, as above set out. It is to be remembered that in this connection we are so far considering only the allegations of mistake as embraced in the first cause of action, eliminating the allegation of fraud and misrepresentation contained in the second cause of action, and that we have not touched upon the proposition of whether or not there could be relief to the plaintiff upon a unilateral mistake, if it should be found that there was no mutual mistake, since it must first be determined, as a matter of fact, from the circumstances surrounding the case, whether or not there could be such mistake at all in regard to this sale as would be recognized by the law as an element in the recission of a contract. It is apparent therefore that the judgment of the trial court cannot be sustained upon the theory that the undisputed evidence shows such a mistake as will give relief.

We turn to the second proposition, to wit, that the undisputed evidence shows such fraud and misrepresentations as will support the judgment of the trial court. It

is urged here that the agency of Owenby is immaterial, and that it is shown by the record that the father, R. J. Burke, assumed to act as agent for the son, and made material representations, which were false, and that, the son having received the benefit of the transaction and retained it, the plaintiff is entitled to relief under the doctrine of *Case Threshing Machine Co. v. Lyons,* 40 Okla. 356, 138 Pac. 167; *Whitcomb v. Oller,* 41 Okla. 331, 137 Pac. 709; *U. S. Fidelity & Guaranty Co. v. Shirk,* 20 Okla. 581, 95 Pac. 218; *Jack v. National Bank,* 17 Okla. 430, 89 Pac. 219; and *C., R. I. & P. R. Co. v. Newburn,* 39 Okla. 710, 136 Pac. 174.

The fallacies of this contention, however, are two: First, that in the second cause of action, which is grounded in fraud, there is no reference made in the pleading of the plaintiff to any agent whatever, but it is alleged that the representations were made by the defendant personally; second, that even if this defect be waived, there was a material question arising from the testimony as to whether or not the plaintiff depended upon the representations made to him or upon the attempted measurement made by his brother and Owenby, this involving somewhat the question of the status of Owenby at that time. The further question is involved as to whether or not plaintiff can be heard to say that he depended upon the representations of the father, if the testimony of the son be believed to the effect that Owenby and the brother called upon him, and that he told them distinctly that he did not know the acreage of the tract, and that he would have to measure it. Certainly the principal cannot be held for the representations of some person assuming to be his agent if he himself, after the making of such representations, has

avoided the effect of them by telling the other party the true facts in the case. Neither can it be said that it was properly established that there was any representation made by John R. Burke personally. The only evidence tending to establish this state of facts is the writing, Exhibit A on behalf of the plaintiff, which was introduced in evidence, and which apparently bore the signature of John R. Burke. In relation to this it was testified that Owenby had mailed a letter to the plaintiff, Smith, containing this writing, and that he had received it from R. J. Burke, the father, and that the son on cross-examination testified that "it looked like his father's writing"; this being after the letter had been admitted in evidence.

If it be contended that this writing was admitted as a statement of the father, R. J. Burke, then it could not be held to be an individual statement of the son, John R. Burke; but, if intended to prove the individual statement of John R. Burke, it was wholly incompetent without proof of its having been signed either by himself or some one authorized to sign for him. *Comanche Merc. Co. v. Mc-Call*, 52 Okla. 725, 153 Pac. 675; *Fidelity Mutual Ins. Co. v. Dean, ante*, p. 84.

It appears therefore that the judgment of the trial court cannot be supported upon any undisputed evidence as to fraud or misrepresentation.

In discussing the question raised we have not distinguished as to whether this action was legal or equitable in its nature, but have given the defendant in error the benefit of discussion of all the contentions raised. Upon the question of the nature of the action we sympathize with the trial court in his expressed doubt as to whether or not it was a legal or equitable one.

In *Howe v. Martin,* 23 Okla. 561, 102 Pac. 128, 138 Am. St. Rep. 840, this court laid down the rule as to the distinction between actions arising upon false or fraudulent representations—the basis of one of the causes of action here involved—and, inasmuch as mistake is coupled with fraud in the sections of our statute referring to rescission of contract, it may well be that actions founded upon mistake should be governed by the same rules. It was there said:

"A person induced by false and fraudulent representations to purchase or exchange for property has three remedies. He may: First, upon discovery of the fraud, rescind the contract absolutely, and sue in an action at law, and recover the consideration parted with upon the fraudulent contract, and in such a case he must restore, or offer to restore, to the parties sued, whatever he has received by virtue of the contract; or, second, he may bring an action in equity to rescind the contract, and in such case it is sufficient for plaintiff to restore, or make offer in his petition to restore, everything of value which he has received under the contract; or, third, he may affirm the contract, retain that which he has received, and bring an action at law to recover the damage sustained by reason of his reliance upon the fraudulent representations."

In this case it will be noted that the plaintiff alleges in his amended petition in the first cause of action that he had "disaffirmed and rescinded the contract," and in the second cause of action that immediately upon discovery of the amount of the land "he elected to disaffirm and rescind the purported contract." These allegations would seem to bring the plaintiff under the first subdivision of the remedies as defined in *Howe v. Martin, supra,* but, after making these allegations, plaintiff alleges that "he is entitled to a rescission and cancellation of his purchase

of said lands," and prays judgment for the "cancellation and rescission of said purported contract." Thus he seemingly intended to bring himself within the classifications embodied in division two as set out in *Howe v. Martin, supra.*

While legal and equitable rights may be pleaded in the same action, the pleadings should be framed upon some definite theory, and should clearly show the nature of the action intended and the relief sought. *Herbert v. Wagg,* 27 Okla. 674, 117 Pac. 209. Apparently, however, both parties in the court below regarded this as an action at law. A jury was called without objection, and the defendant in error requested a directed verdict. Although a jury is permissible in an equity action, its verdict is only advisory *(Kentucky Bank & Trust Co. v. Pritchett,* 44 Okla. 87, 143 Pac. 338), and it would be an anomalous proceeding for the chancellor to direct the jury to bring in the verdict which was intended to be used as advisory upon questions of fact. Having assumed a position in the court below, this court has frequently held that parties will not be allowed to change front here *(Brooks v. Tyner,* 38 Okla. 271, 132 Pac. 683; *Hamilton v. Brown,* 31 Okla. 213, 120 Pac. 950; *Coombs v. Cook,* 35 Okla. 326, 129 Pac. 698), and, if we deny this right to parties, we ought not to assume it ourselves.

It must be held, therefore, that for the purposes of this decision the trial below was at law, and, there being controverted questions of fact necessary for the proper decision of the cause, it was error to direct a verdict.

For the errors in the admission of testimony and in directing the verdict, the cause is reversed, with directions

to the trial court to grant a new trial and for further proceedings not inconsistent with this opinion.

By the Court: It is so ordered.