## HICKMAN et ux. v. HIGHT.

No. 14117—Opinion Filed July 24, 1923.

**1. Vendor and Purchaser—Amount of Land Sold—Terms "More or Less"—Sale by Acre or in Gross.**

J. H., by written agreement, agreed to sell to O. for H., 175 acres of land for $50 an acre, it being certain land lying between two nonnavigable streams owned by J. H. and J., his son, in two several parcels. H., after being shown the land and the written agreement, bought the land through O. J. conveyed 60 acres to H. J. H. and his wife, by warranty deed, conveyed to H. all that part of certain subdivision lying east and south of Poteau river, and also that part of certain other subdivisions lying west of James Fork creek, "containing 117 acres, more or less, according to the U. S. survey thereof." Held to be a sale by the acre and not in gross.

**2. Same—Action by Vendee for Shortage—Evidence—Contract.**

In an action by H. against J. H. and his wife to recover for a shortage in quantity, held, the written agreement between J. H. and O. was properly admitted in evidence as going to show the intention of the parties.

(Syllabus by Ray, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Leflore County; E. F. Lester, Judge.

Action by I. L. Hight against James H. Hickman and Minnie Hickman. Judgment for plaintiff, and defendants appeal. Affirmed.

R. P. White and L. V. Reed, for plaintiffs in error.

Varner & Taylor and Cravens & Cravens, for defendant in error.

Opinion by RAY, C. This is an action upon a warranty deed by the grantee against the grantor for damages for an alleged shortage of acreage in a tract of land conveyed. The action is based upon the implied warranty contained in the deed. The plaintiff recovered judgment for $770, and the defendants appeal. The several errors assigned are presented in the plaintiffs in errors'

brief under three separate headings: (1) The sufficiency of the petition; (2) the insufficiency of the amendment and the evidence; and (3) the instructions of the court.

It is alleged in the petition that in consideration of $5,850, cash in hand paid, the defendants sold to the plaintiff 117 acres of land in Le Flore county, Okla., and sets out the deed at length in the petition, the material parts of which are as follows:

"* * * In consideration of the sum of $5,850 in hand paid, the receipt of which is hereby acknowledged, we do hereby grant, bargain, sell and convey unto I. L. Hight, party of the second part, of Mulberry, Ark., the following described real property and premises, situate in Le Flore county, Okla., to wit: All that part of the southeast quarter of the southeast quarter of the southwest quarter, lying east and south of the Poteau river, * * * and all that part of the northwest quarter of the northwest quarter of section 23, lying west of James Fork creek; all in township 8, north, and range 25 east, of the Indian Base and Meridian, containing 117 acres more or less, according to the United States survey thereof, together with all the improvements thereon and the appurtenances thereunto belonging and warrant the title to the same.

"To have and to hold said described premises unto the said party of the second part, his heirs and assigns forever, free, clear and discharged of and from all former grants, charges, taxes, judgments, mortgages and other liens and incumbrances of whatsoever nature * * *"

—and followed by this allegation:

"That said land was sold to the plaintiff by the defendants at and for the sum of $50 per acre, making a total purchase price of 117 acres of $5,850, as hereinabove set out, and plaintiff alleges that said tract of land, instead of containing 117 contained only 88.6 acres, to plaintiff's damage in the sum of $1,420.

The defendants lodged a general demurrer to the petition, which was overruled and exceptions saved. At the time of the trial the court permitted the plaintiff to amend his petition by inserting the following allegation just before the prayer:

"That at the time of making the said sale the defendant, and his agent, J. M. O'Bar, represented to the plaintiff that there were 175 acres of land in the two tracts being sold to him, 115 in one tract and 60 acres in the other tract, and that said sale was made on an acreage basis and the plaintiff paid for the said lands at the rate of $50 per acre. That the plaintiff relied upon said representations so made by the defendant to defendant's agent O'Bar, and by O'Bar to the plaintiff."

The defendants' motion to strike this amendment as irrelevant and redundant was overruled and exceptions saved. The amendment in no way changed the plaintiff's cause of action, and the court did not err in permitting the amendment to be made. St. L. & S. F. Ry. Co. v. Long, 41 Okla. 117, 137 Pac. 1156; Jones v. Kress, 54 Okla. 194, 153 Pac. 655; Maston v. Glen Lumber Co., 65 Okla. 80, 163 Pac. 128.

The case was tried on the petition as amended and no demurrer was filed thereto. We are of the opinion that the demurrer to the petition is not before us for consideration.

J. M. O'Bar, a real estate broker of Ft. Smith, Ark., after a conversation over the telephone with the defendant James H. Hickman, went to Hickman's house, where the following agreement was drawn up and signed:

"Panama, Okla., 8-13-1918. I have this day sold to J. M. O'Bar for I. L. Hight, of Mulberry, Ark., 175 acres of land, more or less lying on the south and east side of the Poteau river just east of Panama, Okla., all in a body, two houses and lots in the town of Panama, and a ferry boat at the public road crossing of the Poteau river goes with the land. I am to get $50 per acre for the land when clear abstract and title is made, abstract and title to be made as soon as possible.

"J. H. Hickman,
"J. M. O'Bar accepts.

"Witness to sig.: A. Bailey, Panama, Okla."

(On back of contract)

"Rent not included. I further agree to pay J. M. O'Bar $5 per acre, $875 for making deal. J. H. Hickman."

At the time this agreement was signed O'Bar gave Hickman his check for $100 as a payment on the land to hold the deal. Within a day or two thereafter, O'Bar took the plaintiff, Hight, to see the land, and while showing the land told Hight that the price of the land was $50 per acre, and at the same time showed him the above written instrument which was admitted in evidence upon the trial. Defendants contend that the written agreement between Hickman and O'Bar was improperly admitted in evidence upon the ground that O'Bar was acting as agent for Hight and not for Hickman. We think it was properly admitted without regard to the question of agency. It was an offer to sell 175 acres of land at $50 an acre, signed by Hickman and delivered to Hight. The offer was accepted and the property was deeded by Hickman to

Hight. It was admissible for the purpose of showing the intention of the parties.

The 175 acres was a tract of land lying between the Poteau river and James Fork creek. Hickman owned the land immediately surrounding, and owned all of the 175 acres with the exception of approximately 60 acres owned by his son, Jesse Hickman, and, in this transaction, James H. Hickman was acting for himself and his son, Jesse Hickman.

The land was conveyed to the plaintiff by two deeds, one deed containing 60 acres, more or less, by Jesse Hickman, for which Hight paid $3,000; the other tract containing 117 acres, more or less, was conveyed to the plaintiff by James H. Hickman and his wife, for which the plaintiff paid $5,750, making a total of $8,750 for the 175 acres.

The only question here to consider is whether this was a sale of the tract in gross or by the acre. Plaintiffs in error contend that the words, "containing 117 acres, more or less, according to the U. S. survey thereof," are words of description and not of covenant, and that we must look to the deed alone for the intention of the parties; while the defendant in error contends that the written agreement between Hickman and O'Bar and the other circumstances connected with the transaction should be considered together with the words of the deed to determine the intentions of the parties. So far as we can find, this question has never been before this court, but has been before the courts of the different states a great many times. In McComb v. Gilkeson (Va.) 135 Am. St. Rep. 944, the court said:

"The words 'more or less' apply only to small excesses or deficiencies. They repel the idea of a contract of hazard, and imply that there is no considerable difference in quantity"

—and quotes from Berry v. Fishburne, 104 Va. 459:

"'The language "more or less," used in contracts for the sale of land, must be understood to apply only to small excesses or deficiencies, attributable to variations of instruments of surveyors, etc. When these terms are used it repels the idea of a contract of hazard and implies that there is no considerable difference in quantity.'"

In Anthony v. Hudson (Ky.) 133 Am. St. Rep. 231, it is said:

"Sales in the gross are of three kinds: (1) Sales strictly by the tract without reference to acreage; (2) sales strictly by the tract where the acreage is mentioned by way of description, tending to show an intention to risk the contingency of more or less; and (3) sales in which extraneous circumstances show the intention not to risk more than the usual rates of excess or deficiency."

In Oakes v. Delancy (N. Y.) 28 Am. St. Rep. 620, it is held:

"The words 'more or less' and 'about,' used in a conveyance in connection with quantity or as qualifying distances, are words of precaution and safely intended to cover some unimportant inaccuracy, and they do not weaken or destroy such indications of distance and quantity, when no other guides are furnished."

In McComb v. Church (Cal.) 180 Pac. 535, the court says:

"The words 'more or less,' as they appear in instruments involved in an exchange of real property, ordinarily would tend to show that the same was one in gross, rather than by the acre only, in absence of contrary showing, but, where a contrary showing was made, such words cannot be said to conflict with the parties' intention that payment be made for the exact amount conveyed."

In the case of Burke v. Smith, 57 Okla. 196, 157 Pac. 51, the court said:

"Sales of real estate in gross are properly divided into four classes: First, sales strictly and essentially by tract, without reference in the negotiation or in the consideration to any estimated or designated quantity of acres; second, sales of the like kind, in which, though a supposed quantity by estimation is mentioned or referred to in the contract, the reference was made only for the purpose of description, and under such circumstances or in such manner as to show that the parties intended to risk the contingency of quantity, whatever it might be, or how much so ever it might exceed or fall short of that which was mentioned in the contract; third, sales in which it is evident from extraneous circumstances of locality, value, price, time, and the conduct and conversations of the parties that they did not contemplate or intend to risk more than the usual rates of excess or deficit in similar cases, or than such as might be reasonably calculated on as within the range of ordinary contingency; fourth, sales which, though technically deemed and denominated sales in gross, are, in fact, sales by the acre, and so understood by the parties."

This tract of land was bounded by the Poteau river and the James Fork creek and certain land lines. If it was the intention of the parties to be a gross sale of land within these boundaries, then, of course, the plaintiff cannot recover, but we cannot reach that conclusion upon the

record in this case. The written agreement between Hickman and O'Bar, which was shown to Hight when he inspected the land, concludes as follows: "I am to get $50 per acre for the land when clear abstract and title is made, abstract to be made as soon as possible." Then indorsed on the back of that instrument, signed by Hickman, are these words: "Rent not included. I further agree to pay to J. M. O'Bar $5 per acre, $875 for making the deal." The $875 which he agreed to pay O'Bar for making the deal is exactly $5 per acre for 175 acres, the exact amount which the written agreement specifies. It seems to us that this indorsement on the instrument accentuates the representation contained in the agreement that the tract of land contained 175 acres. It is true no actual fraud was alleged, but it was alleged that Hickman represented that the two tracts of land contained 175 acres, and that the plaintiff relied upon that representation, and that the two tracts contained substantially a less acreage. The evidence of the defendant James H. Hickman shows that he knew that the two tracts of land contained less than 175 acres. He testified that at the time of signing this written agreement with O'Bar he told O'Bar that he was selling it for $50 an acre, but that they must take it at 175 acres, although he did not think it contained that many acres. O'Bar denied that any such conversation occurred and denied that Hickman ever told him that the two tracts contained less than 175 acres. Without regard to who was telling the truth, Hickman's evidence does show that he knew that the two tracts did not contain 175 acres.

If this had been a large tract of land of small value per acre, recitals in the deed might be strongly persuasive that the same was intended as a sale in gross and not by the acre; but here is a tract of land conveyed as containing 115 acres (the 117 as shown in deed admitted not correct), more or less, for the lump sum of $5,750, which is exactly $50 per acre. And, when that is considered in connection with the written agreement signed by Hickman, where he says he is to receive $50 an acre, and agrees to pay $5 per acre to the agent for selling, and fixes the total amount of the agent's commission at $875, we are convinced that it was intended as a sale by the acre and not in gross.

It has often been held where land was described in the deed by sections and quarter sections, or other subdivisions, according to the government survey, as containing so many acres, more or less, that the buyer accepted the hazard. But that has no application to this case for the reason that this was a sale, not of an entire subdivision, but only certain parts of such subdivisions lying east of the Poteau river and west of the James Fork creek. Had it been a conveyance of the entire subdivision, as surveyed and platted by the United States Government, then it would have been a contract of hazard and the grantee could not have recovered for any shortage nor the grantor for any excess of quantity. But such was not the case. Only certain parts of such subdivisions lying east and west of certain streams were conveyed. To determine the number of acres in any such parts of subdivisions, clearly some survey other than the government survey would be required.

The jury, by their verdict for the plaintiff in the sum of $770, found that there was a shortage of 15.4 acres. That is too great a difference to be considered as caused by the variance of the instruments or small unavoidable inaccuracies. The price per acre was too great to permit us to believe, in connection with the other circumstances, that the plaintiff accepted the hazard or intended to accept it. We are of the opinion that the jury reached a correct verdict upon the evidence.

Plaintiff contends that under the authority of Farrant v. Troutman, 42 Okla. 418. 141 Pac. 776, and McClelland v. Ehrig, 65 Okla. 174, 156 Pac. 307, all the representations made by the plaintiff, as shown by the evidence, were made prior to the execution of the deed, and merged in the deed, that being the final contract between the parties. This, however, is not an action based upon a contract of sale. but upon the implied warranty in the deed itself.

Plaintiffs in error complain of the following instruction:

"And if you find from a preponderance of the evidence that James H. and Minnie Hickman conveyed to the plaintiff, I. L. Hight, and O'Bar was their agent, 117 acres of land at the rate of $50 per acre and said tract was less than 117 acres, your verdict should be for the plaintiff, I. L. Hight, against the defendants, James H. and Minnie Hickman, for whatever shortage there was less than 117 acres at the rate of $50 per acre for such shortage."

The alleged errors consist in: First, that it submitted the question of O'Bar's agency; and, second, that he told the jury that if they found for the plaintiff it should be for whatever shortage there was

less than 117 acres at $50 per acre for such shortage, when the plaintiff at the trial only claimed the shortage from 115 acres. The question of O'Bar's agency was made an issue at the trial and we think the court did not err in instructing the jury upon that question.   As to the instructions to consider whatever shortage there was less than 117 acres, when at the trial it was conceded that, considering the two tracts together, the plaintiff contended for only 115 acres in this particular tract, the error, if any, found no place in the verdict. According to the testimony of one of the engineers who surveyed the tract there was a 17.4 acre shortage from 117 acres, but the verdict of the jury was for $770, which would be 15.4 acres at $50 per acre. We are of the opinion that the instruction did not mislead the jury. The verdict was sustained by the evidence, and the error in the instruction, if error, was harmless.

Plaintiffs in error further contend that the survey was not accurate, but we think there was sufficient evidence before the jury to sustain the verdict.

We are of the opinion that this case should be affirmed.

By the Court: It is so ordered.